1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

BYRON L PETERS,

CASE NO. C20-1422 MJP

11

Plaintiff,

ORDER GRANTING
DEFENDANTS' MOTION TO

12

v.

DISMISS

13

14

15

WILLIAM HANES MONROE JR, KIP
ANDREW HARBISON, MARK
CHRISTIAN GRECO, THE LAW
OFFICE OF GLASSER AND
GLASSER PLC,

16

Defendants.

17

18

This matter comes before the Court on Defendants' Motion to Dismiss. (Dkt. No. 24.)

19

Having reviewed the Motion, Plaintiff's Opposition (Dkt. No. 35), the Reply (Dkt. No. 38), and

20

all supporting materials, the Court GRANTS the Motion and DISMISSES this action.

21

**BACKGROUND**

22

Plaintiff Byron Peters, acting pro se, brings breach of fiduciary duty and fraud claims

23

against the attorneys who handled the settlements of his deceased grandfather's asbestos-related

24

wrongful death claims. The attorneys are defendants William Monroe, Jr., Kip Harbison, and

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 1

1  Mark Greco, (Complaint (Dkt. No. 5)), though Peters has dismissed his claims against

2  Defendants' firm, Glasser & Glasser P.L.C. (Dkt. No. 29). Defendants move to dismiss Peters'

3  Complaint for: (1) lack of personal jurisdiction; (2) improper venue; (3) insufficient service of

4  service; and (4) failure to state a claim. The Court reviews the relevant allegations.

5       In May 2018, Peters learned that he was a statutory beneficiary to his deceased

6  grandfather's estate. (Compl. at 7-8.) His aunt informed him that lawyers for the estate in

7  Virginia (Defendants) would be sending him documents to sign so that they could "process the

8  negotiated wrongful death settlement payments to the statutory beneficiaries." (Id. at 8-9.) The

9  paperwork Peters received included a proposed agreement between the statutory beneficiaries to

10  the estate, that would split the net settlement and grant Defendants' law firm a limited power of

11  attorney. (Ex. 1 to Complaint.)

12       Peters initially refused to sign the paperwork and sought to challenge the settlements with

13  Defendants' assistance. (Compl. at 9.) Harbison refused to assist, informing Peters that only the

14  Administrator of his grandfather's estate had standing to challenge the settlements. (Id. at 11.)

15  Peters also demanded an accounting of the settlements, but Harbison refused, noting that he

16  represented only the estate, not the beneficiaries. (Id. at 11-12.) But he did inform Peters that he

17  could retain his own counsel to investigate the issue. (Id.) Peters alleges that Harbison

18  "intentionally deceived and confused" him on these issues to convince him to sign a statutory

19  beneficiary agreement to obtain his beneficiary interest to three settlements. Ultimately Peters

20  signed the statutory beneficiary agreement, but claims he did so under duress. (Ex. 1 to Compl.

21  (Dkt. No. 5 at 5-1 at 1).)

22       Peters claims that Defendants actually settled the estate's claims for more money and

23  fraudulently diverted funds to themselves through a widespread scheme including Virginia court

24

1  judges and staff. Peters filed a complaint against Defendants with the Virginia Bar Association,

2  but it was dismissed. He then filed his Complaint in this District against Defendants, all of whom

3  are residents of Virginia.

4       Defendants provide declarations attesting to their lack of contacts to Washington and this

5  District. All three Defendants aver they own no property in Washington, have no bank accounts

6  in Washington, solicit no clients in Washington, represent no Washingtonians, and possesses no

7  professional licenses in Washington. (Declaration of Kip Harbison ¶¶ 13-14; Declaration of

8  William Monroe, Jr. ¶¶ 10-11; Declaration of Marc Greco ¶¶ 6-7.) Greco states that he has taken

9  six business trips to Washington over the last twenty years, and Monroe has not been in the state

10  for the last ten years. (Greco Decl. ¶ 7; Monroe Decl. ¶ 11.)

11                              **ANALYSIS**

12  **A.**     **Lack of Personal Jurisdiction**

13       The Court agrees with Defendants that it cannot exercise personal jurisdiction over them.

14          **1.**        **Legal Standard**

15       In opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the

16  burden of establishing that jurisdiction is proper. Boshcetto v. Hansing, 539 F.3d 1011, 1015 (9th

17  Cir. 2008). Where, as here, Defendants' motion is based on written materials rather than an

18  evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to

19  withstand the motion to dismiss." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124,

20  1127 (9th Cir. 2010) (internal quotation marks omitted). And while the plaintiff cannot "simply

21  rest on the bare allegations of its complaint," the uncontroverted allegations in the complaint

22  must be taken as true. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th

23  Cir. 2004) (quotation and citation omitted). If the allegations are contested, the Court "may not

24

1    assume the truth of allegations in a pleading which are contradicted by affidavit." CollegeSource,

2    Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011) (quotation and citation omitted).

3    But the Court resolves factual disputes in the plaintiff's favor. Pebble Beach Co. v. Caddy, 453

4    F.3d 1151, 1154 (9th Cir. 2006).

5        Whether there is personal jurisdiction over Defendants begins with an assessment of

6    Washington's "long-arm" statute of Washington. Glencore Grain Rotterdam B.V. v. Shivnath

7    Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute, RCW

8    4.28.185, reaches as far as the due process clause will allow. Shute v. Carnival Cruise Lines, 113

9    Wn.2d 763, 767 (1989). To conform to due process, the plaintiff must show that the Court has

10   either general or specific jurisdiction.

11       General jurisdiction flows from a non-resident defendant's continuous, systematic

12   business contacts with Washington, not necessarily the acts alleged in the complaint. See

13   Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific

14   jurisdiction arises out of the defendant's forum-related activities provided the defendant has had

15   "fair warning" that its activities in Washington may subject it to the jurisdiction of courts in this

16   forum. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); Helicopteros, 466 U.S.

17   at 414 n.8. Specific jurisdiction comports with due process if the defendants have "minimum

18   contacts [with Washington] such that jurisdiction does not offend traditional notions of fair play

19   and substantial justice.'" Pebble Beach, 453 F.3d at 1155 (quoting Int'l Shoe Co. v. Washington,

20   326 U.S. 310, 315 (1945)). The Court conducts a three-part inquiry to determine whether

21   "minimum contacts" with the forum exist to warrant the court's exercise of specific jurisdiction:

22           (1) the defendant must either "purposefully direct his activities" toward the forum or
             "purposefully avail[ ] himself of the privileges of conducting activities in the forum";
23           (2) "the claim must be one which arises out of or relates to the defendant's forum-related
             activities"; and

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 4

1   (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it
    must be reasonable."

2

3   AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1208 (9th Cir. 2020) (quoting Axiom Foods,

4   Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064,1068 (9th Cir. 2017)). Because Peters alleges tort-

5   based claims, the Court employs a "purposeful direction" analysis to assess the "minimum

    contacts" inquiry. Id. at 1208.
6

7      Given the allegations Peters makes about "tortious conduct [that] takes place outside the

8   forum and has effects inside the forum," the Court "examine[s] purposeful direction using an

9   'effects test' based on Calder v. Jones, 465 U.S. 783 (1984)." AMA, 970 F.3d at 1208. Under

10  this test, "the defendant[s] allegedly must have (1) committed an intentional act, (2) expressly

11  aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the

12  forum state." Id. at 1209 (quotation omitted). As the Supreme Court has cautioned, "[t]he

13  relationship must arise out of contacts that the defendant himself creates with the forum State,"

14  which "must create a substantial connection with the forum State." Walden v. Fiore, 571 U.S.

15  277, 284 (2014). "Due process requires that a defendant be haled into court in a forum State

16  based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated'

17  contacts he makes by interacting with other persons affiliated with the State." Id. at 286.

18     **2.      No General or Specific Jurisdiction**

19     Based on the Court's review of the Complaint and materials Defendants submitted, the

    Court finds a lack of general and specific jurisdiction.
20

21     As to general jurisdiction, Peters provides no argument or allegations that Defendants

22  have systematic or continuous contacts with Washington. Defendants' declarations demonstrate

23  their contacts with Washington are neither systematic nor continuous. Harbison has never visited

24  Washington and his only relevant contacts are through the letters he has exchanged with Peters,

1   including the agreement authorizing Peters to receive benefits. Greco has visited Washington six

2   times in the last twenty years, while Monroe has not been in the state for the last ten years.

3   (Greco Decl. ¶ 7; Monroe Decl. ¶ 11.) All three Defendants aver they own no property in

4   Washington, have no bank accounts in Washington, solicit no clients in Washington, represent

5   no Washingtonians, and possesses no professional licenses in Washington. (Harbison Decl. ¶¶

6   13-14; Monroe Decl. ¶¶ 10-11; Greco Decl. ¶¶ 6-7.) The Court finds no general jurisdiction.

7        As to specific jurisdiction, the Court finds an absence of "minimum contacts" with

8   Washington. Applying the "effects test," the Court finds no purposeful direction aimed at

9   Washington. See AMA, 970 F.3d at 1208. Peters makes no allegation that Greco or Monroe

10   directed or conducted any act towards him in Washington. The only act that Peters identifies as

11   directed at Washington was Harbison's letters and the agreement he mailed to Peters in

12   Washington. These transmissions were not expressly aimed at the forum state generally, just to

13   Peters as the recipient who happens to live in this State. This does not show purposeful direction

14   because, as the Supreme Court has stated, "a defendant's relationship with a plaintiff or third

15   party, standing alone, is an insufficient basis for jurisdiction." Walden, 571 U.S. at 286. Instead,

16   Harbison's contacts with Washington are "based on the 'random, fortuitous, or attenuated'

17   contacts" he made by sending correspondence to Peters who happens to reside in Washington.

18   Id. at 286. This does not show purposeful direction. The Court also notes that the other conduct

19   about which Peters complains all appears to have occurred outside of this State, which does not

20   justify finding personal jurisdiction over Defendants in this forum. The Court therefore finds it

21   improper to exercise personal jurisdiction over Defendants in the absence of "minimum

22   contacts." The Court GRANTS Defendants' Motion and DISMISSES the claims against

23   Defendants for lack of personal jurisdiction.

24

1

**CONCLUSION**

2       Based on the Court's review of the pleadings and the materials Defendants provided, it

3  concludes that it cannot properly exercise personal jurisdiction over any of the Defendants. The

4  Court therefore GRANTS Defendants' Motion and DISMISSES this action. The Court does not

5  reach any of the other issues Defendants raised because doing so was unnecessary to resolve the

6  Motion.

7       The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

8       Dated March 22, 2021.

9

10                                              Marsha J. Pechman
                                                United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24